UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CECIL RAY HARDEN | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 3:10-00779 |
| | )   Judge Sharp |
| ALLIEDBARTON SECURITY SERVICE | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM

This is an employment discrimination case in which Plaintiff Cecil Ray Harden claims that he was denied promotions by his former employer AlliedBarton Security Service, and was unlawfully terminated from employment on account of his race and/or because of his participation in an Equal Employment Opportunity Commission ("EEOC") investigation. Allied Barton has filed a Motion for Summary Judgment and accompanying Memorandum (Docket Nos. 45 & 46), to which Plaintiff has responded in opposition (Docket No. 53) and AlliedBarton has replied (Docket No. 55). For the reasons that follow, AlliedBarton's Motion for Summary Judgment will be granted, except with respect to Plaintiff's claim that he was terminated from employment because of his race.

### I. FACTUAL BACKGROUND[1]

AlliedBarton provides private security services to businesses and organizations throughout

---

[1] The facts are drawn primarily from Defendant's Statements of Undisputed Material Facts, Plaintiff's responses thereto, and Defendant's rebuttal to Plaintiff's response, but only to the extent that the filings are in accordance with this Court's Local Rule 56.01. The Court also discusses, but discounts statements made by Plaintiff that violate the sham affidavit rule which prohibits filing an affidavit which directly conflicts prior deposition testimony in an effort to create a genuine issue of material fact. See, Aerel, S.R.L. v. PCC Airfoils LLC, 448 F.3d 899, 908 (6th Cir. 2006).

1

the United States. One of AlliedBarton's largest accounts in the Nashville area is Vanderbilt University and Medical Center.

On June 10, 2008, Plaintiff was hired by AlliedBarton to work as a security officer at Vanderbilt. Within weeks of his hiring, Plaintiff was promoted to the position of Sergeant by Account Manager James Brown. Upon his assumption of the role of Sergeant, Plaintiff was responsible for ensuring compliance with AlliedBarton's work rules and making sure that employees met AlliedBarton's expectations regarding workplace behavior.

AlliedBarton has a sexual harassment policy which is contained in the employee handbook. That handbook is given to all employees at the time of their hire, and employees are given training on the anti-harassment policy.[2]

In October 2008, AlliedBarton created a new position of Assistant Account Manager for the Vanderbilt account. Plaintiff applied and was interviewed, but AlliedBarton hired Tara Brownfield, a white female, for the position. Ms. Brownfield had several years experience in providing security in hospital settings and private sector management experience, qualifications which Plaintiff did not have. In fact, in his deposition, Plaintiff admitted that he had no private sector management experience, and had no hospital security experience (other than his short stint at AlliedBarton). Although Plaintiff disagreed with the decision, he also admitted in his deposition that Ms Brownfield could be deemed to have been the most qualified, and he had no reason to believe that the decision was based upon race. (Docket No. 48-2, Pf. Dep. at 55).[3]

---

[2] In an Affidavit in response to the Motion for Summary Judgment, Plaintiff claims that he was actually hired in March of 2008, and did not receive the workplace harassment policy until March 30, 2008. Regardless, Plaintiff received the policy before he was terminated, purportedly for inappropriate conduct.

[3] In his post-deposition Affidavit, Plaintiff backtracks by claiming he was more qualified than Ms. Brownfield because he is a former Marine, he provided security for the Tennessee Titans for eleven years,

2

In late November or early December, 2008, a Lieutenant's position at Vanderbilt became available. Again, Plaintiff expressed interest, but AlliedBarton promoted Kenneth Voyles, a white male, to the position. At the time, Mr. Voyles had been with AlliedBarton for over seven years, while Plaintiff had been with AlliedBarton only a matter of months. Further, shortly before the selection was made, Plaintiff had been verbally counseled for failing to properly perform his job duties, specifically, not using a electronic tracking wand that recorded when Plaintiff checked his posts. Plaintiff claims, however, that he was not trained on how to use the device, and the fact that he went to his posts as required could be discerned from other things, such as the supervisors' daily logs.

On November 25, 2008, Plaintiff sent Ms. Brownfield, his supervisor, an email that stated:

Hello, Tara,
My name is C. Dawg. I have a friend who works for you and he thinks you're the hottest little thing. In fact he looks just like me. So why don't you respond to this email as soon as you can so we will know where your head is at. and like me he believes more than a mouth fulls a waste, loves petite women and long hair. and race don't matter. We are firm believers in the content of ones character, and not the color of ones skin.

(Docket No. 46 at 4, scrivener's errors in original[4]). Plaintiff concedes sending the email but he claims that he sent the email only because Ms. Brownfield allegedly made "sexual advances" towards him, and he understood from the way she "flirted with" and spoke to him that Ms.

---

he worked other security jobs, and he is a "Tennessee Post Certified Law Enforcement Officer with sixteen (years) of experience." (Docket No. 52-4 Pf. Aff. ¶¶ 12-17).

[4] This is the email as reproduced in Defendant's brief, and Plaintiff makes no challenge to the reproduction. Defendant claims a copy of the email is attached as exhibit H to its Statement of Facts, but that exhibit apparently relates to a privilege log in another case. Defendant also identifies exhibit I (Docket No. 48-9) as being the "Harden Discipline," but that exhibit, too, appears to relate to a privilege log in another case.

3

Brownfield was "interested in having a personal relationship." (Docket No. 52-4, Pf. Aff. ¶¶26-28).[5] Upon receipt of the email, Ms. Brownfield told Plaintiff that she was not interested in his advances, and forwarded the email to Account Manager Brown. Mr. Brown conducted an investigation, but the extent of that investigation is unknown except that Mr. Brown spoke briefly with Plaintiff over the phone and told him he was terminated.[6]

During his tenure as Account Manager, Mr. Brown removed numerous individuals, both black and white, from supervisory positions for alleged violations of AlliedBarton's policies. These individuals included: Lena Tipton, a black female, who was removed from a supervisory position on September 3, 2008, because she allegedly failed to properly report her absence from work and appeared in an improper uniform; Kenneth Voyles who was removed from his Lieutenant's position on March 15, 2009, because he allegedly did not properly make rounds or complete the employee schedule; Warren Bays, a white male, who was removed from his supervisor position on June 24, 2009, allegedly for failing to properly perform his assigned duties; and Richard Ferrell, a white male, who was removed from his position as a supervisor for insubordination.[7]

---

[5] The "mouthful" reference in the email was made because, allegedly, Plaintiff and Ms. Brownfield had a discussion about the size of women's breasts.

[6] According to Plaintiff, the conversation lasted approximately two minutes. While he admitted to sending the email, he does not recall the rest of the conversation, other than that he was informed his employment was terminated for sending the email. The record does not contain any evidence from either Mr. Brown or Ms. Brownfield, and AlliedBarton's version of events is contained in a declaration of Amy Reinhold, a Regional Human Resources Manager. Ms. Reinhold claims she reviewed AlliedBarton's records and states that "AlliedBarton's training and policies require a manager receiving a complaint of unwanted sexual advances to investigate the matter, including speaking to all individuals involved or identified as witnesses" and that "Mr. Brown did so, including talking to Plaintiff." (Docket No. 48-1, Reinhold Decl.¶ 20).

[7] Plaintiff also claims that Christopher Taylor, a Lieutenant, was demoted for leaving a position unfilled. In response, Ms. Reinhold claims that AlliedBarton's records do not disclose that Mr. Taylor was demoted for this reason and that "Mr. Taylor was returned to a security officer position on or about February 11, 2009, but there is nothing in Mr. Taylor's file to indicate that this was done for any disciplinary reason."

4

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. APPLICATION OF LAW

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

---

(Docket No. 48-1 Reinhold Decl. ¶ 29).

individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In this case, Plaintiff brings both failure to promote claims and a wrongful termination claim based upon race. He also alleges that his termination was in retaliation for engaging in protected activity.

Plaintiff offers no direct evidence of discrimination in relation to any of his claims and hence the Court utilizes the burden shifting paradigm established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff is first required to establish a *prima facie* case of discrimination and, if he or she does so, a presumption of discrimination arises, with the burden of production shifting to defendant to articulate some legitimate, nondiscriminatory reason for its action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from the case, and the plaintiff is then provided the opportunity to show that the reason offered by the defendant is but a pretext for discrimination. See, id. at 508.

**A. Failure to Promote Claims**

"To set forth a prima facie case of discrimination based upon a failure to promote, a plaintiff must show: (1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." Sutherland v. Michigan Dept. of Treas., 344 F.3d 603, 614 (6th Cir. 2003) (citing, Dews v. A.B. Dick Co., 231 F.3d 1016, 1020-21 (6th Cir.2000)). In this case, AlliedBarton claims that Plaintiff's failure to promote claim fails at the fourth element.

6

"In a failure to promote claim, the emphasis in the fourth element is on the relative qualifications of the plaintiff and the employee who actually received the promotion." Prvenzano v. LCI Holdings, Inc., 663 F.3d 806, 814 (6th Cir. 2011). Further, because "[t]he prima facie burden is not intended to be onerous," a plaintiff need not show he and the employee who received the position "had the exact same qualifications," but rather, only that he "possesses 'similar qualifications' to the employee who received the promotion." Id.

At least with respect to the Lieutenant's position, Plaintiff has arguably established the fourth element of a *prima facie* case because he has an extensive background in law enforcement, whereas Mr. Voyles' relative qualifications are unknown. In fact, all the court knows is that Mr. Voyles had been employed by AlliedBarton for a much longer period than Plaintiff.[8] As for the Assistant Account Manager position, Plaintiff is somewhat dissimilar from Ms. Brownfield in the sense that he had a much longer tenure in law enforcement background, but Ms. Brownfield had a longer history working as a security officer in a hospital setting and had some management responsibility in the private sector.

Regardless, and assuming Plaintiff was similarly qualified with the two who were selected for promotion, AlliedBarton has articulated legitimate non-discriminatory reasons for its decisions. AlliedBarton claims that Mr. Voyles was chosen for Lieutenant because he had seven years with the company, whereas Plaintiff had only been employed for six months. Obviously, institutional knowledge can be of some benefit and, in any event, longer tenure with an employer is a legitimate, non-discriminatory reason for an employment decision. See, Bolls v. South-Western Thomson

---

[8] While the record contains the Applications from both Plaintiff and Ms. Brownfield, it does not contain Mr. Voyles' application.

7

Learning, 311 F. Supp. 2d 643, 651 (S.D. Ohio 2003); Johnson v. Fulton Concrete Co., 330 F. Supp.2d 1330, 1339 (N.D. Ga. 2004). As for the account manager position, AlliedBarton was looking for someone who had both security experience in the hospital setting and management experience in the private sector – qualifications which Ms. Brownfield possessed and Plaintiff did not. "Selecting a more qualified candidate constitutes a legitimate, non-discriminatory reason." Hawkins v . Memphis Light Gas & Water, 2013 WL 1149738 at *4 (6th Cir. March 20, 2013) (collecting cases).

Because AlliedBarton has proffered legitimate non-discriminatory reasons, it is incumbent upon Plaintiff forward some evidence that its decision is a pretext for discrimination. Plaintiff has not done so, perhaps because, as he conceded in his deposition, he has no reason to believe that he was denied either promotion because of his race. Althouth Plaintiff believes the decisions were incorrect, it is not the Court's role "to review [a company's] ... business decisions or question the soundness of an employee's judgment," McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir.1990), as an employer can make employment decisions for good reasons, bad reasons, or no reason at all, so long as the decisions are not motivated by a discriminatory intent. See, Danials-Kristis v. New York State Office of Court Admin., 2013 WL 1755663 at *6 (W.D.N.Y. April 24, 2013); Mischer v. Erie Metro. Hous. Auth., 345 F. Supp 2d 827, 830 (N. D. Ohio 2004). Accordingly, summary Judgment will be granted on Plaintiff's failure to promote claims.

**B. Retaliatory Termination Claim**

In order to prevail on a retaliation claim, a plaintiff must prove that "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] . . . ; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part

by [his] protected conduct.'" LaFountain v. Harry, ___ F.3d ___, ___, 2013 WL 2221569 at *2 (6th Cir. May 22, 2013) (quoting, Thaddeus–X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999). As with the failure to promote claim, if Plaintiff establishes a *prima facie* case this raises the presumption of retaliation, a presumption which may be rebutted by the introduction of a legitimate non-discriminatory basis for the adverse employment action. A.C. *ex rel.* J.C. v. Shelby County Bd, or Educ., 711 F.3d 687, 697 (6th Cir. 2013). If Defendant carries this burden of production, "the burden shifts back to Plaintiff[] to 'prove by a preponderance of the evidence that the legitimate reasons offered by [Defendant] were not its true reasons, but were a pretext for' retaliation." Id. (quoting, DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004).

The record in relation to Plaintiff's retaliation claim is sparse, consisting of his deposition testimony. There, Plaintiff claims that he and Ms. Tipton were talking on one occasion, and he mentioned to her that he was making $11 per hour, apparently more than Ms. Tipton was earning. Thereafter, Ms. Tipton filed a discrimination claim and Plaintiff was contacted by an EEOC investigator who told him that he had been listed as a witness. During this brief phone call, Plaintiff informed the investigator that he and Ms. Tipton had a conversation during which he informed her that he was making $11 per hour.

Defendant argues that Plaintiff did not participate in protected activity. He certainly did not oppose an unlawful practice within the meaning of 42 U.S.C. § 2000e-3(a). As for the participation clause, Defendant cites Lehman v. Aramark Healthcare Support Svcs., LLC, 630 F. Supp. 2d 388, 394-98 (D. Del. 2009) for the proposition that "'the more passive the employee's involvement, the less likely that involvement was to be protected,'" and argues that "merely being listed as a potential witness by another employee (apparently for nothing other than the easily-discovered fact of what

9

his wage rate was) is not participation in that employee's charge." (Docket No. 46 at 12).

But Plaintiff was more than a listed witness – according to his testimony (which is unchallenged) he spoke with an EEOC investigator about his rate of pay in relation to Ms. Tipton's claim. Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" involving a discrimination charge. According to the Sixth Circuit, this clause (unlike the opposition clause) affords "'exceptionally broad protections'" and "'extends to persons who have participated in any manner in Title VII proceedings.'" Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 720 (6th Cir. 2008) (quoting, Johnson v. Univ. of Cincinnati, 215 F.3d 561, 582 (6th Cir. 2000)).

That said, Plaintiff's retaliation claim fails because he has not shown a causal connection between his engaging in protected activity and his termination. This is because he presents absolutely no evidence (and admitted in his deposition that he had no evidence) which shows that AlliedBarton knew that he had spoken to an EEOC investigator, or otherwise knew that Plaintiff participated in an EEOC investigation, but an essential element of a retaliation claim is that the employer knew of the protected activity. See, Arendale v. City of Memphis, 519 F.3d 587, 606 (6th Cir. 2008) (listing four elements for a *prima facie* case of retaliation, with the second being that the employer was aware of the protected activity); Harris v. Metro. Gov't of Nashville & Davidson Cnty., 594 F.3d 476, 485 (6th Cir. 2010) (same); Johnson, 215 F.3d at 582 ("A causal link may be shown through knowledge combined with closeness in time that creates an inference of causation"). After all, common sense dictates that "[a] decision maker cannot have been motivated to retaliate by something unknown to him." Gillard v. Georgia Dept. of Corr., 500 Fed. Appx. 860, 869 (11th

10

Cir. 2012) (citing, Brungart v. Bellsouth Telecomms., Inc., 231 F.3d 791, 798 (11th Cir. 2000). Summary judgment will therefore be granted on Plaintiff's claim that he was terminated in retaliation for participating in protected conduct.

## C. Discriminatory Termination Claim

A plaintiff may "make a prima facie showing of discrimination under Title VII by demonstrating '(1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he.'" Dodd v. Donahoe, ___ F.3d ___, ___, 2013 WL 1694418 at *3 (6th Cir. 2013) (quoting, Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010)). For purposes of its Motion, AlliedBarton concedes that Plaintiff can establish a *prima facie* case of race discrimination, but argues that it has advanced a legitimate, non-discriminatory reason for Plaintiff's termination which Plaintiff cannot rebut. Since AlliedBarton does not challenge Plaintiff's ability to establish a *prima facie* case and since the real issue is whether AlliedBarton's purported reason for Plaintiff's termination is the real reason, the Court accepts AlliedBarton's allegedly non-discriminatory reason for its decision and turns to the question of pretext.

Pretext may be shown by demonstrating "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse employment action], or (3) that they were insufficient to motivate [the adverse employment action]." Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 460 (6th Cir. 2004). With respect to these avenues of proof, the Sixth Circuit has stated:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are

11

factually false. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity."

The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or a coverup.

Manzer v. Diamond Shamrock, 29 F.3d 1078, 1084 (6th Cir. 1994); accord, Pennington v. Western Atlas, Inc., 202 F.3d 902 909-10 (6th Cir. 2000)).

While the foregoing is analytically helpful, the Sixth Circuit has recently reiterated its observation that the test "is not rigid and 'it is important to avoid formalism in its application, lest one lose the forest for the trees." Davis v. Cintas Corp., ___ F.3d ___, ___, 2013 F.3d 2343302 (6th Cir. 2013) (quoting, Chen v. Dow Chemical Co., 580 F.3d 394, 400 n.4 (6th Cir. 2009)). After all, "'[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" Id. "This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." Chen, 580 F.3d at 400 n.4. "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." Id. "But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation." Id.

Albeit by the slimmest of reeds, Plaintiff has cast doubt on AlliedBarton's explanation and

12

raised a jury question as to whether Plaintiff was terminated for sending the email to Ms. Brownfield. In response to AlliedBarton's Motion, Plaintiff submitted what appears to be a portion of AlliedBarton's employee handbook which defines sexual harassment as "unwelcome conduct of a sexual nature which may include: repeated offensive sexual flirtations[;] repeated unwelcome advances or physical contact[;] repeated propositions[;] continued or repeated verbal abuse of a sexual nature[;] repeated graphic or degrading verbal comments of a sexual nature about an individual or his/her appearance[; and/or] repeated displays of sexually suggestive objects, material or gestures." (Docket No. 52-3 at 1). That document also indicates that violation of the sexual harassment policy subjects an employee "to discipline up to and including termination." Also attached is a document titled "Disciplinary Matrix Guidelines" that indicates for a "flagrant violation (e.g. physical threats, quid pro quo etc.)" of the sexual harassment policy, the employee is to be suspended pending termination. (Id. at 2). However, "sexual or other harassment – (Other than flagrant verbal remarks, joking pictures) subjects an offender to a final warning or discipline suspension, with termination to occur upon a second offense. (Id.).

Given the undisputed evidence that Plaintiff sent Ms. Brownfield only the one sexually offensive email, it is an open question as to whether his termination was in accordance with company policy. "It is well established that pretext can be shown by 'evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." Timmerman v. U.S. Bank, NA, 483 F.3d 1106, 1119 (10th Cir. 2007) (citation omitted); see, Huston v. Tennessee State Bd. of Regents, 1996 WL 196439 at *2 (6th Cir. April 22, 1996) ("Certainly the fact that an employer has failed to follow internal guidelines may be evidence that a proffered explanation is a mere pretext"); Gibson v. Amer. Greeting Corp., 670 F.3d 844, 854

13

(8th Cir. 2012) (citation omitted) ("A plaintiff may show pretext, among other ways by showing that an employer (1) failed to follow its own policies . . .").

In making the foregoing observations, the Court recognizes AlliedBarton's argument that the Matrix "is not authentciated or even identified, by any admissible record evidence" and its citation to Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 532 n.5 (6th Cir. 2002) for the proposition that "unauthenticated documents do not meet the requirement of Rule 56(e) and cannot be considered in opposition to a motion for summary judgment." (Docket No. 55 at 5 n.1). However, that case was decided long before the December 1, 2010, amendments to Rule 56 which, among other things, provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

"In some respects, the 2010 amendment to Rule 56 works a sea change in summary judgment procedure and introduces flexibility . . . in place of the bright-line rules that . . . obtained previously," including Rule 56(e)'s "unequivocal direction that documents presented in connection with a summary judgment motion must be authenticated." Foreword Magazine, Inc. v. OverDrive, Inc., 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011). "The objection now 'contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be.'" Brown v. Siemens Healthcare Diagnostics, Inc., 2012 WL 3136457 at *5 (D. Md. 2012) (citation omitted, collecting cases). There is no suggestion that the Matrix is not an AlliedBarton document, or that it cannot be authenticated and so the Court can properly consider it in ruling on the Motion for Summary Judgment.

Further, while the Matrix suggests that it is but a guideline and while AlliedBarton claims that the email in question was a "flagrant" violation, that is something which cannot be discerned

14

from the record given the absence of evidence as to what AlliedBarton did to investigate the matter. According to Ms. Reinhold, Mr. Brown was required by policy to thoroughly investigate the matter, but whether he did anything other than phone Plaintiff to tell him he was terminated the Court does not know. And while a shoddy investigation alone (if it was one) may not alone be evidence of pretext, see, Little v. Illinois Dept. of Revenue, 369 F.3d 1007, 1013 (7th Cir. 2004), there is at least some suggestion in the record that all three black supervisors were culled from the ranks and replaced by whites employees.[9]

This is a close case, "but the need to resolve factual issues in close cases is the very reason we have juries." First Nat' of Omaha v. Three Dimension Sys. Prod., Inc., 289 F.3d 542, 545 (8th Cir. 2002). Because Plaintiff has mustered enough evidence to suggest that the stated reason for his dismissal was pretextual, the Court will deny summary judgment on his claim that he was terminated on the basis of race.

## IV. **CONCLUSION**

On the basis of the foregoing, Defendant's Motion for Summary Judgment will be granted, except with respect to Plaintiff's claim that he was discharged because of his race.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[9] The record reflects that Mr. Brown also demoted several white supervisors but, in abstract, this proves nothing since the Court does not know the racial composition of the supervisory force.

15